UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOSETTE PORTER,<br><br>        Plaintiff,<br><br>    v.<br><br>DOLLAR FINANCIAL GROUP, INC.;<br>DFC GLOBAL CORPORATION, d/b/a<br>MONEY MART; MONETARY MANAGEMENT<br>OF CALIFORNIA, INC., d/b/a MONEY<br>MART,<br><br>        Defendants. | CIV. NO. 2:14-1638 WBS AC<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTION TO COMPEL ARBITRATION</u> |

----oo0oo----

        Plaintiff Josette Porter brought this action against defendants Dollar Financial Group, Inc., DFC Global Corporation, and Monetary Management of California, Inc., alleging violations of federal and California state law arising from defendants' efforts to collect on a consumer debt. Defendant now moves to compel arbitration and to dismiss or stay proceedings pending

1

arbitration.[1]

I.   Factual and Procedural Background

On December 29, 2011, plaintiff signed a Deferred Deposit Loan Note in which defendants agreed to provide plaintiff with a loan of $120.00 and plaintiff agreed to make a payment of $141.18 on January 7, 2012. (Peterson Decl. Ex. A ("Agreement") at 1 (Docket No. 9).)  The Agreement contained an arbitration provision, which requires arbitration of, among other things, "all federal or state law claims, disputes or controversies arising from or relating directly or indirectly to any transactions with Lender or any injury to either party as a result of such transactions," "all claims based upon a violation of any state or federal constitution, statute, or regulation," and "all claims asserted by [plaintiff] individually against Lender and/or any of Lender's employees, agents, officers, members, governors, directors, managers, shareholders or affiliated entities . . . including claims for money damages and/or equitable or injunctive relief." (Id. at 2.)

Plaintiff alleges that in 2012 she began receiving calls from defendants on her cell phone, in which defendants asked for someone by another name.  (Not. of Removal Ex. A ("Compl.") ¶ 35 (Docket No. 1).)  According to plaintiff, she immediately informed defendants that they were calling a number that did not belong to the individual with whom they wished to

---

[1]   Both sides requested permission to appear by telephone at the hearing on this motion.  Because oral argument by telephone would not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. L.R. 230(g).

2

speak. (Id. ¶ 36.) Defendants then allegedly told plaintiff they would remove her from their call list and that the calls would cease. (Id. ¶ 37.)

The calls did not cease. (Id. ¶¶ 38-39.) Plaintiff alleges that she has received over two hundred calls on her cell phone from defendants, even after she repeatedly told defendants that they were calling the wrong person and installed a call blocking application on her phone. (Id. ¶¶ 40-41.)

On June 4, 2014, plaintiff filed a complaint in San Joaquin County Superior Court bringing claims for (1) negligent violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq.; (2) willful violation of the TCPA, id.; (3) violations of the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.17 et seq.; (4) invasion of privacy; and (5) intentional infliction of emotional distress. (Compl. ¶¶ 57-86.) Defendant removed to federal court on June 11, 2014, (Docket No. 1), and now moves to compel arbitration and to dismiss or stay proceedings pending arbitration under the Federal Arbitration Act ("FAA"). (Docket No. 8.)

II. Analysis

The FAA provides that a written provision in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It permits a "party aggrieved by the alleged failure, neglect, or refusal of another to

3

arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the] agreement."  Id. § 4.

"The FAA 'mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  Kilgore v. KeyBank, Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).  "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'"  Id. (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).

Plaintiff appears to concede that a valid agreement to arbitrate exists as to the December 2011 loan.  Plaintiff nonetheless argues that her claims are not subject to the arbitration agreement because they arise from calls to collect an unrelated third party's debt with defendants.  The issue thus is whether the agreement encompasses claims relating to efforts to collect on a loan that was not plaintiff's.

The Ninth Circuit applies a narrow construction to arbitration clauses that only address disputes "arising under" the contract or agreement itself, but applies a broad construction to arbitration provisions that by their terms apply to disputes "relating to" the agreement.  Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 921-22 (9th Cir. 2011).  Because

4

the present provision states that it includes disputes "arising from or relating directly or indirectly to any transactions" with the lender, (Agreement at 2), the broad construction applies, see Cape Flattery, 647 F.3d at 922 (noting that provisions using both "arising under" and "relating to" language receive broad construction).

Applying the broad construction, plaintiff's factual allegations must "'touch matters' covered by the contract containing the arbitration clause" in order for arbitration to be proper. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985)). Applying this construction, courts have routinely held that efforts to collect on unpaid contracts are "related to" such contracts for the purposes of determining whether claims arising out of the collection efforts are subject to arbitration. See, e.g., Brown v. DIRECTV, LLC, Civ. No. 12-8382 DMG EX, 2013 WL 3273811, at *6 (C.D. Cal. June 26, 2013) (listing cases). These cases are distinguishable, however, as they all involve efforts to collect on contracts that contained the arbitration provision in question. Here, in contrast, plaintiff claims that defendant's improper calls stem from a different loan taken out by a third party, unrelated to plaintiff's loan or the arbitration agreement therein.

Plaintiff's claims more closely resemble those in In re Jiffy Lube International Inc. Text Spam Litigation, 847 F. Supp. 2d 1253 (S.D. Cal. 2012). In Jiffy Lube, one plaintiff had

5

signed an arbitration agreement with the defendant as part of a contract for an oil change.  Id. at 1262-63.  Although the agreement subjected to arbitration "any and all disputes, controversies or claims" between plaintiff and defendant, the court determined that the agreement did not apply to the plaintiff's TCPA claims alleging he and other class members later received unauthorized text messages from defendant as part of a marketing campaign.  Id. at 1263.  Even if the original contract was the means by which defendant acquired plaintiff's information, and thus could be considered the "but for" cause of the alleged TCPA violations, the court held that the original contract was not "related to" the claims.[2]  Id.  Likewise, plaintiff here alleges that defendant's calls stem from a different transaction than the one for which she agreed to

---

[2]     The court in Jiffy Lube also held that reading the arbitration provision as truly encompassing "any and all disputes" between the parties, without being limited to claims arising out of or relating to the agreement, "would clearly be unconscionable" and lead to absurd results.  Id. at 1262-63.  Although the present arbitration provision contains similar language in parts, (see Agreement at 2 (requiring arbitration of "all claims based upon a violation of any state or federal constitution, statute, or regulation")), the court need not reach the issue of unconscionability here because defendant does not appear to argue that the provision in question is so broad.
       Moreover, reading the provision in question as requiring arbitration for all claims, unrelated or not, would render superfluous the other language in the Agreement limiting the scope of arbitration to disputes "arising from or relating directly or indirectly to any transactions."  The court declines to apply such a reading to the Agreement.  See United States v. 1.377 Acres of Land, 352 F.3d 1259, 1265 (9th Cir. 2003) ("Courts interpreting the language of contracts should give effect to every provision, and an interpretation which renders part of the instrument to be surplusage should be avoided." (citation and quotation marks omitted)).

arbitration; even if that previous agreement was the means by which defendant acquired her contact information, that "alone is not necessarily enough to establish that the claim arises out of or relates to the product." Id.

Defendant responds that the 2011 Agreement "undoubtedly" encompasses plaintiff's claims and that "the indisputable evidence" is that the calls plaintiff complains about related to her 2011 loan. (Def.'s Mem. at 6:17-28 (Docket No. 8).) Although defendant has produced call logs purportedly relating to plaintiff's 2011 loan, (Peterson Decl. Ex. 2), these documents do not necessarily contradict plaintiff's allegations that the calls to which she objects were intended to reach someone else, and thus did not relate to plaintiff's loan. Moreover, the court must assume the truth of the allegations in plaintiff's complaint for the purposes of ruling on defendant's motion to compel arbitration. Brown v. Dillard's, Inc., 430 F.3d 1004, 1006 (9th Cir. 2005). If facts are developed during the course of this litigation which contradict or disprove plaintiff's allegations regarding the subject matter of the calls upon which plaintiff bases her complaint, defendants are free at that time to renew their motion to compel arbitration.

In sum, because plaintiff alleges she received calls that were not related to the contract containing the arbitration provision, the arbitration agreement does not "encompass[] the dispute at issue." Kilgore, 718 F.3d at 1058. Accordingly, the court must deny defendant's motion to compel arbitration at this time.

7

        IT IS THEREFORE ORDERED that defendant's motion to compel arbitration and to dismiss or, alternatively, stay proceedings pending arbitration be, and the same hereby is, DENIED without prejudice.

Dated:  September 2, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE